UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**UNITED STATES OF AMERICA,**

    Plaintiff,

v.                                                 Case No. 8:09-cv-552-T-30TGW

**RONALD A. LUPI; GENE ALAN WEBB,
as Trustee for the Eagles Group #1 Holding
Trust; GLEN A. BORCHARDT; LORI
LUPI,**

    Defendants.
_____/

## ORDER

THIS CAUSE comes before the Court upon Plaintiff, the United States of America's, Motion for Partial Summary Judgment and Memorandum of Law in Support (Dkt. 41). The United States of America ("Plaintiff" or "United States") moves the Court for partial summary judgment to reduce Defendant Ronald A. Lupi's ("Lupi") tax assessments to judgment and to foreclose its federal tax liens encumbering the real property at issue in this litigation. The United States argues that there are no genuine disputes of material fact, and as a matter of law, the United States is entitled to: (1) a judgment in its favor and against Lupi for unpaid federal income tax liabilities for the years 1992 through 1996 in the amount of $712,319.05, as of March 31, 2010, plus statutory additions accruing thereafter as allowed by law; and (2) findings that (i) Defendant Eagles Group #1 Holding Trust (the "Trust") held bare legal title to at least a half interest in the real property at issue as Lupi's nominee (ii) that

interest is subject to the United States' federal tax liens, and (iii) subsequent to its transfer of the real property, the Trust has no legal interest in the property.

No party responded to the United States' motion. On April 28, 2010, the Court entered an order to show cause "why the Court should not consider [the United States'] motion without a response by Defendants." (Doc. 42). On May 5, 2010, the United States and Defendant Lori Lupi Borchardt ("Borchardt") reached an agreement to resolve their priorities to the real property at issue in this litigation (Dkt. 45). Under this agreement, the parties stipulated that, upon approval by the Court, the United States would be entitled to fifty percent of the net proceeds resulting from a sale of the real property at issue in this litigation and Borchardt would be entitled to the remaining fifty percent. Based on this stipulation, Borchardt agreed not to oppose the United States' motion.

The Court concludes that based on the merits of the United States' motion and the record evidence relied upon in support of same, there are no genuine issues of material fact. Accordingly, the United States' motion for partial summary judgment should be granted. The Court also approves the joint stipulation between the United States and Borchardt.

**UNDISPUTED FACTS[1]**

**Lupi's Outstanding Tax Liabilities for Tax Years 1992 through 1996**

According to records of the Internal Revenue Service ("IRS"), Lupi failed to file a tax return for tax years 1992 through 1995. As a result, the IRS's Examination Division investigated Lupi's tax liabilities for these years, determined Lupi's income tax liabilities

---

[1] The Court adopts the United States' statement of undisputed material facts contained in its motion for partial summary judgment based on the Court's independent review of the record evidence. As there is no need to repeat these facts, the Court merely sets forth a summary of the most relevant facts.

pursuant to 26 U.S.C. §6020(b) based on the income attributed to him from third-party sources, and proposed assessments. Upon receiving notice of these assessments, Lupi filed a petition challenging the proposed assessments in the United States Tax Court. During this proceeding, the parties reached an agreement as to Lupi's tax liabilities and, on May 14, 1999, the Tax Court determined the deficiencies in accordance with the parties' agreement.

On July 19, 1999, following the Tax Court's decision, a delegate of the Secretary of the Treasury assessed Lupi for unpaid federal income taxes, including penalties and interest, and gave notice of the assessments and made demand for payment. Lupi refused to repay the full amount.

On July 1, 2002, the United States received an untimely tax return for tax year 1996 from Lupi showing a liability of $21,310. On September 2, 2002, based upon the tax return filed by Lupi, a delegate of the Secretary of the Treasury assessed him with income taxes of $23,310 and penalties and interest in the amount of $25,252.33, gave notice of the assessments, and made demand for payment. Lupi refused to pay the full amount of the assessments and, as of March 31, 2010, the record reflects that Lupi owes a total of $72,302.94 for the 1996 tax year.

In sum, the record reflects that as of March 31, 2010, Lupi is indebted to the United States for taxes, interest, and penalties in the amount of $712,319.05,[2] plus statutory additions accruing thereafter for tax years 1992 through 1996.

---

[2] This total is $76,602.76 for 1992, $145,940.31 for 1993, $286,091.60 for 1994, $131,381.44 for 1995, and $72,302.94 for 1996.

In a criminal proceeding against Lupi (*United States v. Lupi*, Case 8:05-cr-00131-JSM-MSS), Lupi personally signed a Joint Stipulation agreeing that "there were deficiencies in the income tax which he owed for the tax years 1992 through 1995." (8:05-cr-00131; Dkt. 146 at 1-2). Lupi also admitted that he did not pay his outstanding 1996 tax liability. *Id.* Based upon the stipulated facts, in December 2007, this Court convicted Lupi of willfully attempting to evade or defeat the payment of his tax liabilities for tax years 1992 through 1996 in violation of 26 U.S.C. §7201 and for willful failure to file his returns for tax years 1998 through 2002 under 26 U.S.C. §7203. (8:05-cr-00131; Dkt. 162).

**Federal Tax Liens on the Real Property Held by Lupi's Nominee**

In January 1995, the Trust purchased 10.25 acres of land located at 26292 Lost Horse Lane, Brooksville, Florida 34601 from The Edwin C. Botts Trust, Parcel No. R16 422 20 7020 0000 00J0 (the "Property"). On January 14, 1995, Lupi signed the Contract for Sale as "Ronald Lupi/Trustee" on the signature line for the buyer. The record reveals evidence suggesting that Lupi contributed the money for the down payment on the mortgage. Lupi testified during his deposition that he created the Trust around the time the Property was purchased, but did not remember the date of creation. Defendant Gene Webb ("Webb") was the only Trustee.

The record reflects that Lupi bought a manufactured home that he placed on the Property and titled the manufactured home solely in his name and made the monthly payments. Lupi also executed and filed a document in Hernando County entitled Notice of Commencement as the Property's owner/agent, so that he could place the home on the

Property. The record also shows that Lupi dug a well and had electrical lines built on the Property. According to Lupi, he could do what he wanted to the Property without the Trustee's approval. Lupi also used his income associated with his operation of a company called Barn's USA to pay the mortgage, the taxes, insurance, and utilities, and other bills associated with the Property.

In 1999, Lupi built a barn and personal residence on the Property, which he completed in 2001. Lupi spent around $150,000, and used personal funds, instead of obtaining a mortgage, to pay for these improvements. Prior to building the barn and house, Lupi did not obtain the Trustee's permission. The record also shows that Lupi applied for, prepared, and signed the applications for, and obtained all necessary permits, to build a barn and residence on the Property.

While the Trust held bare legal title to the Property, Lupi and Borchardt lived on the Property beginning in early 1995 as their personal residence. Lupi lived at the Property until his prison sentence, and Borchardt has lived at the Property from 1995 until the present. Also, the record reflects that the Trust has no Federal ID number, has not filed a trust tax return, is not registered with the State of Florida, and has filed no trust documents with Hernando County. There is also no evidence that the Trust had a bank account or paid any money towards the purchase or ownership of the Property.

As a result of Lupi's failure to pay the tax liabilities described above, on June 19, 2002, a delegate of the Secretary of the Treasury filed a Notice of Federal Tax Lien ("NFTL") against Lupi with the Clerk of the County Courthouse of Hernando County for tax

years 1992 through 1995. On November 7, 2002, a delegate of the Secretary of the Treasury filed a NFTL against Lupi with Hernando County for tax year 1996. On December 12, 2002, a delegate of the Secretary of the Treasury filed a NFTL with Hernando County against the Trust as nominee of Lupi for tax years 1992 through 1996.

On August 7, 2008, Webb, as trustee for the Trust, signed a quit claim deed to Glen Alan Borchardt for the consideration of $10.00. Pursuant to this quit claim deed, the Trust did "remise, release and quit-claim unto [Glen Alan Borchardt] forever, all the right, title, interest, claim and demand which the said first party has in and to the [Property]." (Gov. Ex. 20). This deed was prepared at the direction of "Lori Lupi" and recorded with the Hernando County Clerk of Court on August 18, 2008. On June 30, 2009, Glen Borchardt irrevocably disclaimed any interest he had in the Property. (Dkt. 23-2). According to Glen Borchardt, he "never consented to the execution" of the quit claim deed, "never provided the Trust with $10.00 in consideration, never used the PO Box address listed on the Quit Claim Deed, and never had the Quit Claim Deed delivered to [him], and therefore ownership was never transferred to [him]." (Dkt. 23-1).

On November 13, 2009, the United States filed a Suggestion of Death asserting its belief that Webb, the Trustee, passed away on May 19, 2009. (Dkt. 38). To date, no interested person has moved to have a new Trustee appointed.

**DISCUSSION**

I.     **Summary Judgment Standard**

Motions for summary judgment should only be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The existence of some factual disputes between the litigants will not defeat an otherwise properly supported summary judgment motion; "the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (emphasis in original). The substantive law applicable to the claimed causes of action will identify which facts are material. Id. Throughout this analysis, the court must examine the evidence in the light most favorable to the non-movant and draw all justifiable inferences in its favor. Id. at 255.

Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, whether or not accompanied by affidavits, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324. The evidence must be significantly probative to support the claims. *Anderson*, 477 U.S. at 248-49 (1986).

This Court may not decide a genuine factual dispute at the summary judgment stage. *Fernandez v. Bankers Nat'l Life Ins. Co.*, 906 F.2d 559, 564 (11th Cir. 1990). "[I]f factual

issues are present, the Court must deny the motion and proceed to trial." *Warrior Tombigbee Transp. Co. v. M/V Nan Fung*, 695 F.2d 1294, 1296 (11th Cir. 1983). A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248; *Hoffman v. Allied Corp.*, 912 F.2d 1379 (11th Cir. 1990). However, there must exist a conflict in substantial evidence to pose a jury question. *Verbraeken v. Westinghouse Elec. Corp.*, 881 F.2d 1041, 1045 (11th Cir. 1989).

A district court cannot base the entry of summary judgment on the mere fact that a motion for summary judgment was unopposed, but, rather, must consider the merits of the motion. *Dunlap v. Transamerica Occidental Life Ins. Co.*, 858 F.2d 629, 632 (11th Cir. 1988) (per curiam). The district court need not *sua sponte* review all of the evidentiary materials on file at the time the motion is granted, but must ensure that the motion itself is supported by evidentiary materials. *Id.* At the least, the district court must review all of the evidentiary materials submitted in support of the motion for summary judgment. *Jaroma v. Massey*, 873 F.2d 17, 20 (1st Cir. 1989) (per curiam) ("[T]he district court cannot grant a motion for summary judgment merely for lack of any response by the opposing party, since the district court must review the motion and the supporting papers to determine whether they establish the absence of a genuine issue of material fact."). In addition, so that there can be an effective review of the case on appeal, the district court's order granting summary judgment must "indicate that the merits of the motion were addressed." *Dunlap*, 858 F.2d at 632.

## II. The United States Is Entitled to Judgment against Lupi

"An 'assessment' is a procedure in which the I.R.S. records the liability of the taxpayer in I.R.S. files." *Behren v. United States,* 82 F.3d 1017, 1018 n. 1 (11th Cir. 1996) (*citing* 26 U.S.C. § 6203; Treas. Reg. (26 C.F.R.) § 301.6203-1)). "It is well established in the tax law that an assessment is entitled to a legal presumption of correctness-a presumption that can help the Government prove its case against a taxpayer in court." *United States v. Fior D'Italia, Inc.,* 536 U.S. 238, 242, 122 S.Ct. 1117, 1122 (2002); *United States v. Janis,* 428 U.S. 440-41, 96 S.Ct. 3021, 3025-26 (1976); *Suarez v. United States,* 582 F.2d 1007, 1010 & n. 3 (5th Cir. 1978); *Carson v. United States,* 560 F.2d 693, 695-96 (5th Cir. 1977). "Unquestionably the burden of proof is on the taxpayer to show that the Commissioner's determination is invalid." *Helvering v. Taylor,* 293 U.S. 507, 515, 55 S.Ct. 287, 291, 79 L.Ed. 623 (1935).

The United States' tax assessments are presumptively correct as a matter of law and Lupi failed to rebut any of the amounts. The record reflects that the Tax Court previously determined Lupi's outstanding tax liability for 1992 through 1995 based upon an agreement Lupi consented to. Also, for tax year 1996, the outstanding liability is based on the tax return Lupi filed. Moreover, in Lupi's criminal proceeding, Lupi stipulated to his liabilities for 1992 through 1996. Thus, based on the assessed amounts contained in the record, the United States is entitled to a judgment in its favor and against Lupi in the amount of $712,319.05 as of March 31, 2010.

### III. The United States Is Entitled to a Federal Tax Lien on 50% of the Property

After assessment, demand, and failure to pay, a tax lien attaches automatically to all property and rights to property belonging to a taxpayer. 26 U.S.C. § 6321. The lien arises at the time of assessment and continues until the assessed liabilities are satisfied or become unenforceable. 26 U.S.C. § 6322.

The record reflects that on July 19, 1999, a tax lien arose for tax years 1992 through 1995 against Lupi on all property and rights to property belonging to him. The record also reflects that a tax lien arose for tax year 1996 on September 2, 2002. Finally, the record reflects that subsequently, NFTLs were filed on June 19, 2002, November 7, 2002, and December 12, 2002.

The United States argues that even though Lupi has never been a record owner of the Property, a federal tax lien attaches to the Property because it is being held by Lupi's nominee, at least as to a one-half interest.[3] "'Property' and 'rights to property' for the purposes of 26 U.S.C. § 6321 include not only the property and rights to property owned by the delinquent taxpayer, but also property held by a third party if it is determined that the third party is holding the property as a nominee ... of the delinquent taxpayer." *May v. United States,* No. 07-10531, 2007 WL 3287513, at *1 (11th Cir. Nov. 8, 2007) (*quoting Spotts v. United States,* 429 F.3d 248, 251 (6th Cir. 2005)) (alteration in original); *accord Shades Ridge Holding Co. v. United States,* 888 F.2d 725, 728 (11th Cir. 1989) ("Property of the nominee or alter ego of a taxpayer is subject to the collection of the taxpayer's tax

---

[3] As set forth in more detail herein, pursuant to the joint agreement between the United States and Lori Lupi Borchardt, Borchardt is entitled to the remaining one-half interest.

liability."). "[T]he nominee theory stems from equitable principles. Focusing on the relationship between the taxpayer and the property, the theory attempts to discern whether a taxpayer has engaged in a sort of legal fiction, for federal tax purposes, by placing legal title to property in the hands of another while, in actuality, retaining all or some of the benefits of being the true owner." *In re Richards,* 231 B.R. 571, 578 (E.D. Pa.1999).

Factors considered to determine whether property is being held by a nominee of the taxpayer include: (1) whether the taxpayer exercised dominion and control over the property; (2) whether the property of the taxpayer was placed in the name of the nominee in anticipation of collection activity; (3) whether the purported nominee paid any consideration for the property, or whether the consideration paid was inadequate; (4) whether a close relationship exists between the taxpayer and the nominee; and (5) whether the taxpayer pays the expenses (mortgage, property taxes, insurance) directly, or is the source of the funds for payments of the expenses. *United States v. Todd,* No.5:05-cv-343-Oc-10GRJ, 2008 WL 2199873, at *3 (M.D. Fla. Mar.19, 2008). These factors are not to "'be applied rigidly or mechanically, as no one factor is determinative.'" *Id.* (*quoting In re Richards,* 231 B.R. at 579). "The most critical issue is who has substantial control over the property." *Id.*

The record evidence in this case clearly reflects that the Trust holds or held the Property as nominee of Lupi, at least as to one-half of the Property. The record reflects that Lupi exercised dominion and control over the Property. He decided to purchase the land, signed the contract, created the Trust to hold title, selected the Trustee, and made the down payment. He also payed the mortgage, taxes, and insurance on the land, purchased and payed

for a manufactured home so he could live on the Property, installed a well and electrical lines, built a barn and a personal residence on the Property, and improved and otherwise exercised control over the Property without consulting, seeking, or obtaining the permission of the Trustee. Lupi failed to rebut any of this evidence.

There is also no evidence that the Trust paid any consideration for the Property. And there is no evidence that the Trust had a bank account. The record reflects that the Trust possessed at least a one-half interest in the property as Lupi's nominee and that this interest either arose prior to or just after the filing of the NFTLs and occurred before the transfer in August 2008.

Pursuant to the agreement, as set forth above, between the United States and Lori Lupi Borchardt, Lupi's spouse during the relevant time period, the Court also concludes that the United States would be entitled to fifty percent of the net proceeds resulting from a sale of the Property and Borchardt would be entitled to the remaining fifty percent.

Finally, the Court concludes that because the Trust was merely a nominee and it subsequently transferred the Property, it has no rights in the Property.

It is therefore ORDERED AND ADJUDGED that:

1. The United States of America's Motion for Partial Summary Judgment (Dkt. 41) is hereby GRANTED.

2. The Clerk is directed to enter judgment in favor of Plaintiff, the United States of America, and against Defendant, Ronald A. Lupi, in the amount of $712.310.05, as of

March 31, 2010, plus statutory additions for each day subsequent to March 31, 2010, until the judgment is paid in full.

3. As set forth herein, the Trust held at least a one-half interest in the Property as Lupi's nominee and the United States' tax liens attach to Lupi's one-half interest in the Property.

4. As set forth herein, the Trust has no property interest in the Property.

5. Pursuant to the Joint Stipulation between the United States and Lori Lupi Borchardt (Dkt. 45), the United States and Lori Lupi Borchardt are each entitled to fifty (50) percent of the net proceeds resulting from a sale of the Property.

**DONE** and **ORDERED** in Tampa, Florida on June 9, 2010.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel/Parties of Record

S:\Even\2009\09-cv-552.msj.frm